Good morning. Effie Anastasio here on behalf of the appellate Yenidunya. This case involves a shareholder who paid $2.2 million for its shares in a privately held corporation, Magnum. The appellate Yenidunya never agreed to sell its shares and never received any consideration for its shares. More importantly, I must confess. You've got 30 seconds, Chad, before our question, so that's a go. Okay. No, let's see. Judge Smith, you go first, and then Judge Hellestine after that. Okay. I read this case with kind of a smile on my face. I used to practice this kind of law for years, and I have never even heard the argument that you actually have to surrender a stock certificate to lose your rights. Is there any case law that you can cite anywhere from any jurisdiction that says that? Yes. I cited in my brief numerous cases that says that you have to physically transfer and endorse the stock certificate before the transaction is a consummated sale. But that's not what it says, counsel. I mean, Article VIII of the Commercial Code has all kinds of exceptions to it. In reality, you're talking about things like this was real property. It doesn't have to be adverse possession or something. That's a whole different concept. Here, I mean, you heard about a launch. You know what they are. You've got this kind of a document that says you've got certain rights. If you exercise them, these folks exercise their drag-along rights. After that time, you didn't have any benefits that you previously had. You've known it for a long, long, long, long, long time. And you're taking the position that because you still held on to this certificate that you still have all your rights. I mean, that's a basic Hornbook law, isn't it? It's personal property. And I cited basic Hornbook law saying that a stock certificate is personal property. It needs to be transferred. Just like if you have a motor vehicle, in order to transfer a motor vehicle, you have to transfer the certificate of title. But that's different. The law of title to a motor vehicle is clear under the state law that that is how you transfer title. But with a stock certificate, that is evidence, evidence of ownership. But there are many ways to transfer the ownership without even having it. For example, it's quite frequent that people lose their stock certificates, and you can give a certificate of indemnity in lieu of that. Do you agree with that? Oh, of course. Okay. So based on your theory, though, if they don't have the stock certificate, you can't transfer it. Well, in that case, though, there's special provisions regarding that and special clauses that apply and verifications that you have to make for a lost stock certificate. Here, it's an agreement that wasn't self-executing, because here you have the stock certificate. It's personal property. It needs to be endorsed for transfer. Case after case that I cited where they had actual agreements to transfer the stock, and because the certificate wasn't exchanged, the court found that a transaction hadn't been consummated. So here we have an un-executed, un-consummated transaction. Yes? Your client's predecessor, a client of mine, pleaded an obligation to his partner to render this certificate on demand and give the records to his parents while the stock was taken up by a buyer. Notice of call was issued March 8, 2005. It was equivalent of a demand from your client to render. Your client refused. At that time, if you were right, you were a cause of action. In fact, the man was made upon you, objected, has then an obligation within the statute of limitations to assert your promise. He neglected to do that. That's the key. That's the man upon you to surrender and consistently with the agreement that your predecessor obligated his partner. You can't just say, I refuse to do what I'm supposed to do, and say I have a perfect right to sit on it, correct? Well, it's — but it's personal property. And so if the personal property — The books of the corporation have to be conformed, and the document that you have in hand has to be conformed to the actuality. You don't have a document in private. It's not a bearable note. It's an instrument reflecting an interest in the stock that's recorded on the book. But it's — You have an obligation. It's a bundle of rights and interests. You have an obligation. But the transaction was never consummated. They never forced us to deliver our stock certificate. They did it to them. What are they supposed to do, visit your house? Well, it's — no. They could have gone to a court of law to enforce their right, and they never did it. Well, okay. I think that's — I think that's a little bit you're pointing to. You feel they needed to do something, and when the statute and the other side and the district court said you needed to do something. So, to me, what I see here is you're saying there are some confusing things in here, but you say we need to get to the merits to ascertain whether the statute of limitations has run. But six years previous, your client was notified that they weren't — that the company was not recognizing your client as a shareholder. Yes, you do have the certificate, but you don't get to go to meetings. You don't — you know, all of those things were not recognizing you. So, simplistically, at that point, if you're told you're not being recognized as a shareholder, don't you need to do something about it? I mean, the max statute of limitations is four years, any way you look at it. That was six years before. Well, I would say — I mean, you seem to be taking the position the company had to do something. You didn't have to do anything, and you could sit on your hands, even though you were told, we are not recognizing you as a shareholder, and that's undisputed. Well, the reason being is that we retained title to the stock certificate, and they never gave us any consideration. Yes, there was an — You know there's a dispute at that point. You know there's a dispute. But it doesn't matter because it's an unconsummated transaction. That's what you have to go back to, that the transaction never happened. So they say yes. What transaction never happened? The sale of the shares, because not only did we not deliver the stock certificate, they never gave us any consideration for the stock certificate. But Judge Hellerstein reminded you of the fact that the predecessor to your client signed a document for which consideration was present, agreeing to certain things, one of which was the drag-along rights. And here you move forward now, and you're talking about the sale not being consummated. I don't even know what you're talking about, because the reality is the deal was done before your client ever took it over. But they took the deal subject to the limitations of the deal, and the deal included the drag-along rights. Well, no, actually, let's go back as far as the deal happened in 2005. Okay, my client's predecessor signed this amendment to buyout agreement that my client never signed. And although they were affiliates, and although my client acquired shares. Her client was an assignee. Assignor's commitment binds your client. Your client can't have any better rights than your assignee. And whether or not that was an enforceable right to begin with, because of the fact that it wasn't notated on the stock certificate, that the purchase, that the stock agreement among shareholders was never signed. That goes back to what Judge Callahan pointed out to you, and that is that you say you disagree with what happened. You were on notice in March, whatever it was, that you weren't getting these on March 6th or something. You weren't getting notices anymore. You were done as far as the company was concerned as a shareholder. You set on your rights thereafter, feeling as you do, should you not have gone to court right away and said, hey, wait a minute. My assignor did something wrong, or there's something wrong with the document. We're not bound by that. But you didn't do that. You waited until after the statute of limitations had arguably passed under California law. But the other, but the key part of it, when I say it was an unconsummated transaction, not only did we not deliver the stock certificate, they never delivered the consideration for the stock certificate. Who delivered the stock certificate last year? I just don't know. Were you able to get the money for the certificate? Who knows? I mean, I mean, what I'm saying is that if they had a right to enforce a contract, that contract never happened. So how could our. They have to sue. So do you. Maybe if they sued now, the statute of limitations would bar them. You're going to look at the suit. You. You're going to look at the suit. You have the right to go to court to enforce your respective rights and obligations. If you wanted the money attributable to those certificates, go for it. You should have made a demand for it. Well, part of my complaint is to interpret the promissory note, which remains unperformed. It remains unperformed because your client's predecessor decided to convert it. Well, but the whole. The whole. The whole. In 2003, your predecessor converted notes into equivalent amounts of stock. Correct. No, no, no. I'm talking about the promissory note that was to be consideration for turnover of the shares. There was a promissory note, a 10-year note, that was to be given to Yenidunya in exchange for this share certificate. That promissory note, the original. $1,133,996. Right. But it's never been turned over to us. Never made a demand for it. They have said that they would give us the promissory. Answer that question sometimes. Sorry, you're driving me a little bit crazy. Okay, sorry. Because every time someone's asking you a question, it's like you didn't hear it. Okay, sorry. So he said, did you make a demand for it? Not that I'm aware of. Okay. Now you can say what you want. Okay. And so what I'm saying is that the promise, since the promissory note was never delivered, there was no consideration ever given for exercise of a drag-along right. They did not even put it into an escrow. They have just held on to the promissory note. And so they have not. But you didn't demand any money. No, because we didn't recognize the transaction. We said it was invalid, that we don't agree. And so the truth. People go to court when there's a disagreement, when they're aware that they have a dispute, and that's why they have a statute of limitations. You're at two minutes. Why don't you say you wanted to reserve for a rebuttal, right? Okay. Well, you can use it now if you want, but then there's no more rebuttal. Okay. Thank you. Good morning. Good morning. May it please the Court, Brendan McCauley for Appellees, Magnum Seeds, and Jenica Research Corporation. All right. Do we need to reach the merits of this case in order to decide whether the statute of limitations is run? We do not. The district court properly focused on the two issues that you look at every time in a statute of limitations case. When was the claimed harm, and when did the plaintiff know about the harm? Both of these things happened at the exact same time in March 2005. There's no dispute about it. It's in the complaint. And ever since then, Yenadunya has been denied all rights and privileges as a shareholder, and now those are enjoyed by Jenica, the purchaser. Let me ask you this, just because there's always what you tell us, and then there's a back story. Why would someone have – what would be the financial benefits for not making a demand at that time and waiting, or what was going on in the company that might be someone's – Are you asking why do I believe that Yenadunya waited this long? Yeah. The facts suggest that Yenadunya was essentially trying to gamble with Jenica's money. Jenica comes in as a purchaser, invests all kinds of money, pays off outstanding debts of the obligation, which relieves personal liability for George Sparrow and Yenadunya. New employees, new products, licenses, all sorts of investment go into this company for years. And the facts suggest that Yenadunya wanted to gamble with somebody else's money to say, well, let's see how it comes out, and if the company does great, I'll come in and claim my share interest. And if it does poorly, I'll take the money that's sitting in escrow right now today, waiting for Yenadunya to claim it. Yenadunya along that line spent originally $2.3 million, the magnitude. When the conversion occurred, they hoped to recover that amount of money and more. But as it turned out, when the stock offer was made, Jenica thought it was worth half of what it was originally. That's right. The company was failing. And so Yenadunya had no real interest in looking to take back a 10-year note for half the investment in a fraction of what it invested, and hoped to stay along and do better. So if you're going back – Well, at the time, the company was failing, and the interest in the corporation would have been zero if left to its own devices. Jenica came in and offered a good amount of money. It was 50 cents on the dollar for the shares, but also relieved personal liability. There was some bank notes, and there was actually a negative balance, if you will, of the corporation. That was the best deal available. All the other shareholders realized that. All the other shareholders took the deal. Yenadunya, which, by the way, George Spiro, its president at the time, was the president and CFO, I believe, of Magnum, well aware of the deal and the terms. So this was a deal that was there. Everybody took it, realized it was their best shot. Yenadunya decided to gamble and see if it could get a better deal later, and waited six years. So if they make a demand now, you're prepared to pay them? Absolutely, and have been all the way along, every time the issues come up. Is that a 10-year note? Well, by now it's fully paid. It could be prepaid, and it has been fully – it's been accelerated and paid. And that offer has been made time and again. Full value? Yes, the full amount of the note. But – so the statute of limitations is the beginning and end of the analysis here. And there are multiple cases. We can go into those. Supreme Court here in California, which was following the Supreme Court in Texas, in the Yeoman v. Galveston case. It was also following the Supreme Court in Colorado. These are all statute of limitations cases. They all stand for the proposition that once the shareholder is aware that its rights are repudiated, it has to sue. The statute of limitations starts running. Here in California, that's four years, and there's no dispute about that. I did want to address the underlying merits for just a moment, because as Your Honor points out, Article VIII isn't the beginning and end of how you transfer an interest in a corporation. The comments to Article VIII themselves say this is not the only place and the only way that one can transfer an interest in a corporation. And I'll read from the comment to 8302, and it states, Article VIII is not a comprehensive codification of all of the law governing the creation or transfer of interest in securities. And it cites an example, basically Article IX. You can get security interests, foreclose on those, take the property. The comments also state, similarly, Article VIII does not determine whether a property interest in certificated or uncertificated security is acquired under other law, such as the law of gifts, trusts, or equitable remedies, nor does Article VIII deal with transferrations by operation of law. There are multiple ways that interest can be transferred, as Your Honor well knows from an agreement of the parties, which, by the way, also varied the terms of the commercial code. Because parties can do that, too, in addition to whatever the commercial code says, they can contract their way around it. And that's what the buyout agreement did here. There's a case coming out of the bankruptcy court in Delaware where the parties did just that, particularly with respect to the delivery of shares. Now, that case, the Wamu case, I have a cite here, that case was a very, of course, complicated transaction that related to the sale of a whole bank, Washington Mutual Bank. So it was far more detailed. But the bottom line was they were aware of the certificated rights. They wanted to make sure that wasn't an issue. They contracted around it. The court looked at that and said, that's perfectly fine. You can do that under commercial code. In California, it's 1302. In Delaware, it's 1-302. Counsel, isn't it the case that in, certainly with large publicly traded corporations, that most of the shares are held in street name and are not actually physical shares? They're just book entries, in effect. That's right. And the register of the corporation has a certain effect. And when the corporation enters the name of the shareholder, that itself has effect as to who is the owner. And the piece of paper is evidence of ownership. But you've got to start with what's the corporation say. Now, there are quite a number of cases that say the entry by the corporation is enough. And counsel in her, I'm sorry, in the reply brief mentioned some cases from Pennsylvania. One of them was a Superior Court case called Wagner v. Hart Chemical, saying that at least in Pennsylvania, you need to have actual delivery. But there are two Supreme Court cases in Pennsylvania cited in Wagner v. Hart that say, no, you don't. What the corporation enters as the name of the shareholder, that is enough. And those cases are McClements. These are cited in the Wagner v. Hart. McClements v. McClements, that's 411 Pennsylvania 557. That's a 1963 Pennsylvania Supreme Court case. And Wagner v. Wagner, unrelated Wagner, also Pennsylvania Supreme Court, 466 Pennsylvania 432. That's a 1976 case. Those are Pennsylvania. But again, here in California, we have the Simon v. Steelman case. Both parties have addressed. In that case, the shareholder never endorsed and never delivered the certificate. And the Court said, that doesn't matter. We're going to view it as delivery. We'll view that a transfer has happened. And interestingly, in Simon v. Steelman, the Court echoed the comments as to Article 8 by saying that even an equitable reason for considering the shares to have been transferred is enough. And the Court even cited the maxims of jurisprudence that we all know and love here in California at the end of the Civil Code and basically said that which ought to have been done will be deemed to have been done. And that was enough to consider the share to have been transferred. Kennedy. That's always been very meaningful to me. Yeah, actually, I love the maxims of jurisprudence. Well, is there anything worth publishing here or is this just California law? Well, it's been quite a number of years since McGuire and the — Yeah, but we're a federal court, you know, so if we're just applying California law. The reality is we don't need to get to the merits, right? This is a statute of limitations question, that part. If we feel that the statute of limitations has run us in the district court, the issue of stock certificates and all that is really part of the merits, is it not that we don't need to get to that? That's right. It's irrelevant. If there are no further questions on that, I'd just like to move briefly to the attorney's fees piece of this. That is, there's a consolidated appeal on the motion for attorney's fees, district court-awarded fees. Just to focus in the issue for a moment, there's no issue as to the reasonableness of fees or who is a prevailing party. Those issues aren't appealed. The sole issue is, is there a contract right, is there a basis, a legal right for legal fees? And the district court had it correct when he ruled there was. There were three documents, three agreements that were challenged that were attached to the complaint. All three of them had an attorney's fees clause. One was a promissory note that was the consideration for the shares. The second was a stock purchase agreement, which was the vehicle for buying back those shares. And third was the buyout agreement, which Judge Hallerstein has noted was signed by Yanandunya's predecessor in interest. Yanandunya, by the way, George Spiro was the president of Spiro Spiro and Company, the original shareholder that signed the amendment to the buyout agreement. And he's also the president, controller, owner of Yanandunya. These are just two of his corporations. So he signed it wearing his Spiro Spiro hat and now is trying to avoid it wearing his Yanandunya hat. Well, are you suggesting that we should look at this on the basis of, in effect, piercing the corporate veil? Are you just saying that the assignor entered into an obligation that the assignee takes his or her rights subject to those obligations? It's the assignee-assignor situation's successor in interest. Right. So Spiro, therefore, Yanandunya, signed the buyout agreement. I'm sorry, the amendment to the buyout agreement. The recitals state, which are conclusively presumed to be true under Evidence Code 622, California Evidence Code, conclusively state that shareholder, Spiro, Yanandunya, is a party to the buyout agreement. And it doesn't matter that the copy that Yanandunya attached to the complaint isn't a signed copy. They've recited that fact to be true. It's conclusively presumed that they are a party to that buyout agreement, the underlying document being amended. That buyout agreement has an attorney's fees clause, and it's one of the most broad the broadest language you can get on an attorney's fees clause. Any action or proceeding arising from or related to, that's this case. The district court had it absolutely right in ruling that we are entitled to attorney's fees. Now, there's been some question about whether the Reynolds line of cases, the Shue v. Zavara line of cases that deal with the mutuality of remedy, Civil Code 1717, whether that line of cases should be applied. And Yanandunya says, well, we're not the signatory, presumably the person with the pen writing on the paper. It doesn't matter whether they're signatory. I'm going to say, I don't see where Civil Code 1717 really applies here, because that's really where you have a one-sided attorney fee clause in there, and then that stronger party usually loses the case. Then the court says, based on the statute, that the non-benefited party gets it to based on 1717. But in this case, I gather you're not arguing 1717. You're just saying that this attorney clause, attorney fee clause, covered everybody in this agreement. You're the S&R was a signatory, but it's not a 1717 situation at all. Well, we argued both, 1717 and the direct party to a fee clause. And you can get there either way, because 1717 is not just you have a one-sided clause. The cases have Reynolds for Shue v. Zavara. They have employed that mutuality remedy to say, let's say a non-party is suing under a contract. They're not even a party at all. Not a situation where they're both parties and the fee clause is not mutual. So the cases have used it in a broader sense, and the district court below used it in that broader sense. It didn't have to. Under signative property, you know, the concept that — Those cases, counsel, don't those really follow kind of equitable concepts? Yes. They just figure that, hey, you know, the stronger party here just tried to screw these other people, and it's just not fair to let them get away with it, so we're going to let them have attorneys. Correct. There's also the question of fairness, that if you're going to sue somebody, and if you win, you get the attorney's fees under that agreement, you need to be prepared to pay fees if you lose. So there's that fairness concept, too, that was employed by the district court. But the district court could have ruled under the buyout agreement exclusively the successor to someone who signed it is obligated. And that's a separate independent basis to award fees in this case. It wasn't the one chosen by the court below, but this Court can certainly do so under the concept that any basis for supporting the record is enough. Go ahead. What was the basis used by the district court? The mutuality of remedy, the 1717. Same thing. Same result. If the Court has no further questions. Thank you for your argument. Thank you. Okay. I just want to touch on a few key points. First, the McGuire case, which stated that if lapse of time can bar an action by a member to establish his interest in the corporation. Here, our argument is clear that there was the lapse of time could not perfect the right because the security was not transferred and no consideration was given for the transfer. So it was an unconsummated transaction. And that's why our statute didn't run. We retained possession of the certificate. Second, I wanted you to go back and look at the Simon case, because in that case, the California court specifically found that there was no transfer of certificate from one shareholder to another because a stock certificate was not endorsed for transfer to the other shareholder. Instead, they found it was a redemption, and they found it was redemption because the stock certificate was expressly handed over to the attorney with instructions to cancel the certificate, and he testified in court in his divorce case that he had transferred the stock certificate and the corporate records were marked that it was invalid, but there he acted. And the court, the shareholder was arguing that it had been transferred to him, and the court said no, it was not, because it was not endorsed for transfer. I also wanted to cite you to a case. You asked me if there was any case where the court had held where there was an agreement and that they specifically found, despite the agreement, that there wasn't a transfer because a physical stock certificate had not changed hands. And that case was cited. It was on page 20 of my brief. It was the Bank West case from South Dakota in 1984. Kagan. Is that a statute of limitations case? No. It wasn't a statute of limitations case. All right. So that has to do with if their transfer had occurred. Correct. Not whether you're on notice as to whether you should bring a cause of action. Correct? Right. But if the transfer has never occurred, then we don't have no other words. The McGuire case stands for if lapse of time ruins your rights. But if the transfer never occurred, then we're still a shareholder. That's, I think, what the Court has as — I'm sorry my brief isn't clear enough about this, but that's it. But I think we have your argument in mind. We've gone into overtime at this point, so this will conclude your argument. Okay. Thank you so much. Thank you both for your argument in this matter. It will stand submitted. The Court will stand in recess until tomorrow at 9 a.m.
judges: Hellerstein, Callahan, Smith